## JEREMIAH ROWE & al. vs. ARD GODFREY, JR.

*Mem.* SHEPLEY J. was attending the trial of indictments, and did not sit in this case.

Where depositions are taken before a magistrate, with notice to the opposing party, objections to the form of the questions as leading, must be made at the time the questions are put, or they will be considered as waived; and if the opposite party neglects to attend at the taking, he cannot make such objections at the trial.

At the trial, before EMERY J. the plaintiffs introduced the depositions of *Samuel Getchell* and *Robert Getchell.* The counsel for the defendant objected to the admission of the answers to ten of the questions put to the witnesses, because the questions were leading. The following are some of those objected to, and others were similar.

"2d interrogatory by *N. Wilson, Esq.* Atty. to plff's. Was or was not *Ard Godfrey, Jr.* frequently at the shop of *Rowe* and *Turner,* and did he not himself give the directions in relation to the aforesaid work, and did you or not hear him engage to pay them for the said work? Answer by the deponent. I did hear him agree to pay for the work done, and he was in the shop as often as once a day, and frequently three or four times a day, to give directions about the work done." "6th question to *Robert Getchell,* by same. Did you see or know of any one, at the time you were in the employ of *Rowe & Turner,* exercising any acts of ownership or control over the said shop or the business of said shop, except said *Rowe & Turner?* Answer by deponent. I did not." The defendant was duly notified, but did not attend at the taking of the deposition. The objection was overruled by the Judge, and the questions and answers were permitted to be read. The verdict was for the plaintiffs, and the defendant filed exceptions.

*Cutting* argued for the defendant : 1. That the testimony taken by deposition should be as near as possible to that delivered upon the stand, if the deponent were personally in Court. 2. The interrogatories in both cases should be propounded in such form, as not to suggest to the witness or deponent the answers which he is

to give; otherwise they are leading, especially if they can be answered by yes and no. *Woodman* v. *Coolbroth*, 7 *Greenl.* 184; 1 *Stark. Ev.* 122 and note. He contended, that these answers should have been excluded. The omission to attend the taking of the deposition is not a waiver by the defendant of any right to make this objection in Court. There can be no waiver, except when the party is actually present, and does not make the objection. The authorities go to that extent and there stop. *Woodman* v. *Coolbroth*, 7 *Greenl.* 183; 3 *Binney*, 130; *Potter* v. *Leeds*, 1 *Pick.* 313.

*J. Appleton* and *Wilson*, for the plaintiffs, said that the objection was merely formal, and that it was very questionable, whether the questions were leading. 1 *Stark. R.* 82. And they contended, that if they were leading, the objection should have been made at the time of the taking, or it was waived. *Woodman* v. *Coolbroth*, 7 *Greenl.* 181; 10 *Sergt. & R.* 63; *Talbot* v. *Clark*, 8 *Pick.* 55. And not only must the objection be made, but the grounds of it must be stated. *Allen* v. *Babcock*, 15 *Pick.* 56. And if the party does not choose to attend, such formal objection is waived. 1 *Pennsyl. R.* 305.

The opinion of the Court was by

EMERY J. — The counsel for the defendant objects to the admission of the " depositions of *Samuel Getchell* and *Robert Getchell*, so far as respected the answers to *certain questions put by the plaintiff as being leading.* He does so," as he says, " because he apprehends injustice has been done to his client, and because he wishes the Court to discountenance the practice," and he declares that the " future reputation of the *Penobscot* bar demands it, that the practice is to be arrested, or a witness is to be reduced to the position of an automaton, governed and controled solely by the pulleys and wires attached to him and the counsel."

Attempts to lead a witness to communicate false impressions of facts to a court or jury call for severe animadversion. It is not to be doubted that questions are proposed which are characterized as leading. Such questions, when seasonably and properly presented to the consideration of the court by objection, are rejected for that cause. Still the great object of examination in chief and cross ex-

amination of witnesses is to extract the truth. The superiority of the personal presence of a witness before the tribunal, *finally to* decide on the effect of his testimony, over the written statement in depositions, for eliciting truth, is with us, in common law proceedings, universally acknowledged. It has, however, long been deemed requisite for the administration of justice in civil cases to resort to written depositions. To a certain extent all examinations in a certain sense, must be leading. The best settled forms of interrogatories begin with inquiries, helping to obtain the description of the witness, his acquaintance with the parties, and the subject of controversy. Some indulgence must be allowed to direct the mind of the witness to the developement of *all that he knows bearing* on the issue to be tried. For courts have not favored motions for new trials on account of omissions fully to interrogate a witness, and extend but little charity to the *want of a witness' recollection of matters connected with the merits,* when he is on the stand, and a fair opportunity given to test his perception and memory of what he is called to relate, because of the great danger of pretended want of recollection at an after period. Whether testimony be produced on the stand, or in depositions, it is highly proper in examination in chief, that purely leading questions should be prevented; though " it is not a very easy thing to lay down any precise general rule as to leading questions."

In 2 *Stark. Rep.* 105, 110, *Rex* v. *Watson,* on its becoming necessary on the part of the crown to identify three other prisoners, charged in the same indictment with the prisoner, *Watson,* it was objected, that the attention of the witness was too directly pointed to them. But the court held that the counsel for the prosecution might ask in the most direct terms, whether any of the prisoners was the person meant and described by the witness.

And in *United States* v. *Gibert & al.* 2 *Sumner,* 92, it was objected that the witnesses for the government were allowed, with the chart of the *Mexican's* route on her voyage before them, to be asked the question, whether under the circumstances stated of the supposed time of starting of both vessels, the *Mexican* and *Panda* would or would not be likely to meet at the point marked on the chart    The objection proceeded on the ground that under the circumstances the question became the leading question.    Mr. Justice

*Story* declared "his opinion that the objection was unfounded in law. The chart of the *Mexican* was already in the case. It was the true and appropriate question which the witnesses were called upon to solve in the negative or affirmative according to their own skill, judgment and experience in nautical affairs. The form of the question could not lead them, and it could not mislead them."

Where the question was so framed as to indicate particularly the answer which the plaintiff wished, as in 6 *Binney's R.* 483, *Lessee of Snyder & al. v. Snyder*, "the words were," by the court, said to be "put into the witness' mouth." The question was, "did said *Bower* assign to you as a reason why he would not bid more for the *Isle of Cue*, that he could buy *Billing's* land for £3 an acre, and that in yearly instalments, which in his opinion was equally good with the *Isle of Cue?*" Answer: "He did tell me so, but I can't tell at what time." By *Tilghman & Breckenridge* the objection was holden to be good.

It would certainly seem in the present case, that the 4th and 5th interrogatories to *Samuel Getchell*, and the 6th to *Robert Getchell*, were nearly as objectionable. In 2 *Starkie R.* 65, *Nichols* v. *Dowdy & Kemp*, Lord *Ellenborough* says, if the answers yes or no would be conclusive, the question would be objectionable, but in general, no objections are more frivolous than those which are made to questions as leading ones.

But the inquiry still returns, notwithstanding the interrogatories were deserving of the severe animadversions which they have received from the defendant's counsel, whether there is for that reason cause for opening the action to another trial. It is to be recollected that the defendant was duly notified of the taking of these depositions but did not attend. We must therefore regard the neglect to attend as voluntary. And we cannot, under these circumstances, extend to him any greater advantages than we should if he had attended. Had he been present, and without objection, permitted the questions to be propounded, he would have been precluded from availing himself of the objection at the trial. By his interposing an objection before the justice, the question might have been varied, and addressed to the witness in a form free from any objectionable character. *It is too late.* 7 *Greenl.* 181, *Woodman v. Coolbroth*, and cases there cited.

In *Stratford* v. *Sanford*, 4 *Conn. R.* second series, 275, the question came up directly. And the Chief Justice, *Hosmer*, observed "as a general rule, leading questions are not allowed on the examination in chief. Yet if the witness appears to be in the interest of the other party, or unwilling to give evidence, the Court will, in its discretion, permit the examination in chief to assume the form of a cross examination. 1 *Phil. Ev.* 205; 1 *Stark. Ev.* 122, 127. *It is then not a peremptory and exclusive rule, but is always subject to the Court's discretion, and in all events is not a ground for a new trial.*"

We do not perceive that injustice has been done to the defendant by the verdict of the jury, nor any call for the exercise of discretion to set it aside. We overrule the exceptions.

*Judgment on the verdict.*